# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | |
|---|---|
| SHUNTA SHEPARD,<br><br>  Plaintiff,<br><br>v.<br><br>CREDIT ONE BANK, N.A.,<br><br>  Defendant. | Case No. 3:22-cv-01032<br><br>Chief Judge Waverly D. Crenshaw, Jr.<br>Magistrate Judge Alistair E. Newbern |

To:  The Honorable Waverly D. Crenshaw, Jr., Chief District Judge

## REPORT AND RECOMMENDATION

Pro se Plaintiff Shunta Shepard brings this breach of contract action against Defendant Credit One Bank, N.A.'s (Credit One) to challenge Credit One's closing of two credit card accounts.[1] (Doc. Nos. 12, 18-1.) Credit One filed a motion to compel arbitration and dismiss this action under the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1 et seq. (Doc. No. 19.) Shepard responded in opposition (Doc. No. 25), and Credit One filed a reply (Doc. No. 26). The Court referred this action to the Magistrate Judge to dispose or recommend disposition of any pretrial

---

[1]  Shepard's amended complaint states that the basis for federal court jurisdiction over her claims is federal question jurisdiction under 28 U.S.C. § 1331. (Doc. No. 12.) But Shepard identifies only "breach of contract"—a state-law cause of action—when asked to "[l]ist the specific federal statutes, federal treaties, and/or provisions of the United States Constitution that are at issue in this case." (*Id.*) Although Shepard refers to 18 U.S.C. § 8 in the body of the amended complaint, she does not cite it as a cause of action. (*Id.*) Thus, it does not appear that the Court has federal question jurisdiction over Shepard's claims. It is more likely that the Court has diversity jurisdiction under 28 U.S.C. § 1332. Other filings establish that Shepard resides in Tennessee (Doc. No. 5) and Credit One is headquartered in Nevada (Doc. No. 20), and Shepard claims damages of more than $75,000 in the amended complaint (Doc. No. 12). Nonetheless, the plaintiff bears the burden of pleading facts sufficient to establish federal jurisdiction. *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990). If Shepard's case remains in or returns to this Court, the Court should order her to show cause why it may exercise jurisdiction over her claims.

motions under 28 U.S.C. § 636(b)(1)(A) and (B). (Doc. No. 15.) For the reasons that follow, the Magistrate Judge will recommend that the Court grant in part Credit One's motion to compel arbitration and dismiss the action without prejudice.

**I.      Factual Background and Procedural History**

Shepard maintained two credit card accounts operated by Credit One. (Doc. Nos. 12, 18-1, 19-1.) Credit One executive Michael Wiese states by declaration—and Shepard does not dispute—that Shepard consented to the terms of a written card agreement that Credit One mailed to Shepard with each credit card. (Doc. Nos. 19-1, 25.) That card agreement contains an arbitration agreement which states:

> This agreement to arbitrate provides that you or we can require controversies or disputes between us to be resolved by BINDING ARBITRATION. You have the right to REJECT this agreement to arbitrate by using the procedure explained below.
>
> If you do not reject this agreement to arbitrate, you GIVE UP YOUR RIGHT TO GO TO COURT and controversies or disputes between us will be resolved by a NEUTRAL ARBITRATOR INSTEAD OF A JUDGE OR JURY, using rules that are simpler and more limited than in a court. Arbitrator decisions are subject to VERY LIMITED REVIEW BY A COURT. Arbitration will proceed INDIVIDUALLY— CLASS ACTIONS AND SIMILAR PROCEDURES WILL NOT BE AVAILABLE TO YOU.
>
> **Agreement to Arbitrate:** You and we agree that either you or we may, without the other's consent, require that controversies or disputes between you and us (all of which are called "Claims"), be submitted to mandatory, binding arbitration. This agreement to arbitrate is made pursuant to a transaction involving interstate commerce, and shall be governed by, and enforceable under, the Federal Arbitration Act (the "FAA"), 9 U.S.C. §1 et seq., and (to the extent State law is applicable), the laws of the State of Nevada.
>
> For purposes of this agreement to arbitrate, "you" includes you, any co-applicant, any Authorized User (including Additional Cardholders), or anyone else connected with you or claiming through you; and "we" or "us" includes Credit One Bank, N.A., all of its parents, subsidiaries, affiliates, successors, predecessors, employees, and related persons or entities, and all third parties who are regarded as agents or representatives of us in connection with the subject matter of the claim or dispute at issue.

**Covered Claims:** Claims subject to arbitration include, but are not limited to, any controversies or disputes arising from or relating in any way to your Account; any transactions involving your Account; any disclosures made to you concerning your Account; any interest, charges, or fees assessed on your Account; any service(s) or programs related to your Account; and, if permitted by the rules of the arbitration forum, any collection of debt related to your Account. Claims also include controversies or disputes arising from or relating in any way to advertising, solicitations, or any application for, approval of, or establishment of your Account. Claims subject to arbitration include any controversies or disputes based on any theory of law, whether contract, tort, statute, regulation, common law, or equity, or whether they seek legal or equitable remedies. All Claims are subject to arbitration whether they arose in the past, may currently exist, or may arise in the future. Arbitration will apply even if your Account is closed, you pay us in full any outstanding debt you owe, or you file for bankruptcy. Also, controversies or disputes about the validity, enforceability, coverage, meaning, or scope of this agreement to arbitrate or any part thereof are subject to arbitration and are for the arbitrator to decide. Any questions about what Claims are subject to arbitration shall be resolved by interpreting this agreement to arbitrate in the broadest way the law will allow it to be enforced.

**Claims Not Covered:** Claims (whether brought initially or by counter or cross-claim) are not subject to arbitration if they are filed by you or us in a small claims court, so long as the case remains in such court and only individual claims for relief are advanced in the case.

\* \* \*

**How to REJECT this Agreement to Arbitrate:** You can reject this agreement to arbitrate but only if we receive from you a written notice of rejection within 45 days after it was first provided to you. To reject this agreement to arbitrate you must send the notice of rejection to: Credit One Bank, Attention: Arbitration Opt Out, P. O. Box 98873, Las Vegas, NV 89193-8873. Rejection notices sent to any other address will not be accepted or effective. If you decide to reject this agreement to arbitrate in writing, your notice must state that you reject this agreement to arbitrate and include your name, address, account number, and personal signature. Rejection of arbitration will not affect your other rights or responsibilities under this Card Agreement.

**Survival, Severability, and Amendment of Terms:**
*Survival.* This agreement to arbitrate shall survive changes in the Agreement and termination of the Account or the relationship between you and us, including the bankruptcy of any party and any transfer or sale of your Account, or amounts owed on your Account, to another person or entity.
*Severability.* If any part or parts of your agreement to arbitrate are declared unenforceable, then such specific part or parts shall be of no force or effect and shall be severed, but the remainder of this agreement to arbitrate shall continue in full force and effect. If, however, the entire agreement to arbitrate or your waiver

3

> of the right to bring or participate in a class or representative action or in consolidation procedures is unenforceable, then the agreement to arbitrate shall be of no force or effect. Notwithstanding the preceding sentence, with respect to California Account Holders, if arbitration is unenforceable, in whole or in part, you and we agree to resolve any Claim by a judicial reference proceeding as described above.
>
> *Amendment in Writing Only.* This agreement to arbitrate may not be amended, severed, or waived, except as expressly provided in the Agreement or in a written agreement between you and us.

(Doc. No. 19-1, PageID# 106–08, 120, 122.) Wiese states, and Shepard concedes, that Shepard did not reject the arbitration clause when entering into the card agreements with Credit One. (Doc. Nos. 19-1, 25.)

Shepard incurred charges and made payments on the credit cards between 2019 and 2022. (Doc. No. 19-1.) Shepard alleges that, on October 11, 2022, she sent Credit One two money orders and a handwritten letter instructing Credit One to apply the money orders to the balances on her credit card accounts. (Doc. Nos. 12, 18-1.) Credit One sent Shepard letters dated October 17 and 18, 2022, informing her that it had closed her accounts "due to unauthorized payment activity" and that the accounts would "be reported to the consumer reporting agencies as 'Account Closed by Credit Grantor.'" (Doc. No. 18-1, PageID# 60, 61; Doc. No. 19-1, PageID# 179, 180.) Shepard demanded that Credit One reopen her accounts, but Credit One refused. (Doc. No. 18-1.)

Shepard's amended complaint alleges breach of contract and defamation claims against Credit One. (Doc. No. 12.) Credit One responded to the amended complaint by filing a motion to compel arbitration under the FAA and dismiss Shepard's amended complaint with prejudice. (Doc. No. 19.) Shepard argues that the Court should deny Credit One's motion because the card agreement and arbitration agreement are "null and void" and her breach of contract claims fall outside the scope of the arbitration agreement. (Doc. No. 25, PageID# 196.) Credit One argues that Shepard's challenges to the validity of the card agreement and the scope of the arbitration agreement must be resolved by an arbitrator, not by the Court. (Doc. No. 26.)

## II. Legal Standard

The FAA provides that written agreements to arbitrate disputes arising out of commercial contracts "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract . . . ." 9 U.S.C. § 2. This provision reflects "a 'liberal federal policy favoring arbitration[.]'" *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). However, arbitration remains "'a matter of contract and a party cannot be required to submit to arbitration any dispute which he [or she] has not agreed so to submit.'" *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986) (quoting *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582 (1960)).

Under the FAA, anyone aggrieved by another's alleged failure or refusal to arbitrate pursuant to a written arbitration agreement may petition a federal district court for an order directing the parties to proceed to arbitration in accordance with the agreement. 9 U.S.C. § 4. The overarching question for a court in resolving a motion to compel arbitration is "whether the parties agreed to arbitrate the dispute at issue." *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000). "When considering a motion to stay proceedings and compel arbitration under the [FAA], a court has four tasks:"

> first, it must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration.

*Id.* In making these determinations, courts must "examine the language of the contract in light of the strong federal policy in favor of arbitration" and "any ambiguities in the contract or doubts as to the parties' intentions should be resolved in favor of arbitration." *Id.* Courts evaluating motions

to compel arbitration "'treat the facts as they would in ruling on a summary judgment motion, construing all facts and reasonable inferences that can be drawn therefrom in a light most favorable to the non-moving party.'" *Green v. Mission Health Communities, LLC*, No. 3:20-CV-00439, 2020 WL 6702866, at *4 (M.D. Tenn. Nov. 13, 2020) (quoting *Jones v. U-Haul Co. of Massachusetts & Ohio Inc.*, 16 F. Supp. 3d 922, 930 (S.D. Ohio 2014)).

Where, as here, a party challenges the validity of an arbitration agreement, the FAA instructs courts to apply state contract law to determine validity and enforceability. 9 U.S.C. § 2; *see also Anderson v. Amazon.com, Inc.*, 490 F. Supp. 3d 1265, 1271 (M.D. Tenn. 2020) (citing *Seawright v. Am. Gen. Fin. Servs., Inc.*, 507 F.3d 967, 972 (6th Cir. 2007)). "Thus, generally applicable state-law contract defenses like fraud, forgery, duress, mistake, lack of consideration or mutual obligation, or unconscionability, may invalidate arbitration agreements." *Cooper v. MRM Inv. Co.*, 367 F.3d 493, 498 (6th Cir. 2004). Courts distinguish between challenges to the validity of a contract as a whole, which are "matter[s] to be resolved by the arbitrators, not the federal courts[,]" and challenges to the validity of an arbitration agreement, which "federal court[s] may adjudicate . . . ." *Glazer v. Lehman Bros.*, 394 F.3d 444, 452 (6th Cir. 2005) (citing *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 402–04 (1967)); *see also Fazio v. Lehman Bros.*, 340 F.3d 386, 393 (6th Cir. 2003) (same). If the "court is satisfied that the agreement to arbitrate is not 'in issue,' it must compel arbitration. If the validity of the agreement to arbitrate is 'in issue,' the court must proceed to a trial to resolve the question." *Great Earth Companies, Inc. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002) (quoting 9 U.S.C. § 4). To place "the validity of the agreement [ ] 'in issue,' the party opposing arbitration must show a genuine issue of material fact

as to the validity of the agreement to arbitrate. The required showing mirrors that required to withstand summary judgment in a civil suit."[2] *Id.* (citation omitted).

### III. Analysis

Shepard concedes that she received the written card agreement from Credit One and "did not opt out of arbitration" by the means provided in the agreement. (Doc. No. 25, PageID# 196.) It is therefore undisputed for purposes of Credit One's motion that Shepard and Credit One entered into a written arbitration agreement.

Shepard's only argument for invalidating the arbitration agreement is that the entire card agreement is unenforceable. Specifically, Shepard argues that the card agreement is "null and void due to [Credit One] breaching their agreement" and is "also not enforceable due to lack of consideration." (*Id.*)

---

[2] In resolving a motion for summary judgment, the Court must undertake "the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Under Federal Rule of Civil Procedure 56, a court must grant summary judgment if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating that no genuine issues of material fact exist. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets its burden, the non-moving party must "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (citation omitted); *see also Blizzard v. Marion Tech. Coll.*, 698 F.3d 275, 282 (6th Cir. 2012) ("Once a moving party has met its burden of production, 'its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.'" (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986))). The parties "must support" their assertions "that a fact cannot be or is genuinely disputed" by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or, alternatively, by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A)–(B).

The Sixth Circuit has repeatedly held that, "when claims [in opposition to a motion to compel arbitration] involve 'the validity of the contract as a whole' and not just the arbitration agreement, '[s]uch claims are to be brought before the arbitrator, not the district court in deciding a petition to compel arbitration.'" *Fazio*, 340 F.3d at 394 (second alteration in original) (quoting *Great Earth Companies, Inc.*, 288 F.3d at 892); *see also Glazer*, 394 F.3d at 452. There is no material dispute that Shepard challenges the validity of the card agreement in its entirety. That challenge is properly resolved by an arbitrator.

With respect to scope, Shepard argues that her breach-of-contract claim against Credit One "does not fall within the broad definition[ ] of the 'claims' covered by the arbitration agreement." (Doc. No. 25, PageID# 195.) Credit One argues that the parties agreed to delegate disputes about the arbitration agreement's scope to an arbitrator. (Doc. Nos. 19, 26.) In the alternative, Credit One argues that Shepard's claims fall within the arbitration agreement's broad scope. (Doc. No. 19.)

The Supreme Court has held that parties may agree to arbitrate "'gateway' questions of 'arbitrability,' such as . . . whether their agreement covers a particular controversy[,]'" "so long as the parties' agreement does so by 'clear and unmistakable' evidence." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529, 530 (2019) (first quoting *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68–9 (2010); and then quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). The arbitration agreement at issue here contains a delegation provision that states: "controversies or disputes about the validity, enforceability, coverage, meaning, or scope of this agreement to arbitrate or any part thereof are subject to arbitration and are for the arbitrator to decide." (Doc. No. 19-1, PageID# 106, 120.) Shepard has not challenged the validity of this provision—apart from her challenge to the validity of the entire card agreement—and the Court finds that the delegation provision is clear and unmistakable evidence that the parties agreed to

have an arbitrator decide disputes about the arbitration agreement's scope. *See Swiger v. Rosette*, 989 F.3d 501, 505 (6th Cir. 2021) ("A valid delegation clause precludes courts from resolving any threshold arbitrability disputes, even those that appear 'wholly groundless.' Only a specific challenge to a delegation clause brings arbitrability issues back within the court's province." (quoting *Henry Schein, Inc.*, 139 S. Ct. at 529))); *Becker v. Delek US Energy, Inc.*, 39 F.4th 351, 355 (6th Cir. 2022) ("[A] valid delegation provision removes judicial purview and transfers the question of arbitrability to an arbitrator."). Consequently, there is no material dispute that the parties agreed to arbitrate questions about the arbitration agreement's scope. Finally, Shepard has not asserted any federal statutory claims. (Doc. Nos. 12, 18-1.)

Credit One has met its burden to show no material dispute of fact that Shepard's challenge to the validity of the card agreement, including the scope of the arbitration clause, is properly resolved by an arbitrator and that Shepard's claims in this action are not otherwise exempt from arbitration.

The only question remaining for the Court is whether to stay this action pending arbitration. The FAA provides that, "upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration," the court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration." 9 U.S.C. § 3. Shepard titled her response in opposition to Credit One's motion as a "motion to stay" (Doc. No. 25, PageID# 195), but the substance of her response does not request a stay or present any facts, argument, or legal authority to support a stay. Shepard's "[v]ague reference[ ] to a stay do[es] not constitute a request for a stay" under the FAA. *Hilton v. Midland Funding, LLC*, 687 F. App'x 515, 519 (6th Cir. 2017). Because Shepard has not asked the Court to stay this action while

9

Case 3:22-cv-01032   Document 29   Filed 06/09/23   Page 9 of 10 PageID #: 219

arbitration takes place or opposed Credit One's request that the case be dismissed while arbitration proceeds, the Court should dismiss the action without prejudice. *See, e.g.*, *Anderson*, 490 F. Supp. 3d at 1277 (compelling arbitration and dismissing action without prejudice because all of plaintiffs' claims were referred to arbitration); *Green*, 2020 WL 6702866, at *9 (compelling arbitration and dismissing action without prejudice because "plaintiff ha[d] not requested a stay of this matter pending final resolution by the arbitrator, and because all of her claims [were] referred to arbitration").

## IV. Recommendation

For these reasons, the Magistrate Judge RECOMMENDS that Credit One's motion to compel arbitration and dismiss (Doc. No. 19) be GRANTED IN PART and that the Court compel arbitration of Shepard's claims and dismiss this action without prejudice.

Any party has fourteen days after being served with this Report and Recommendation to file specific written objections. Failure to file specific objections within fourteen days of receipt of this Report and Recommendation can constitute a waiver of appeal of the matters decided. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004). A party who opposes any objections that are filed may file a response within fourteen days after being served with the objections. Fed. R. Civ. P. 72(b)(2).

Entered this 9th day of June, 2023.

_____
ALISTAIR E. NEWBERN
United States Magistrate Judge